Her third argument of the morning is in Appeal No. 24-1765, the United States v. Leonides-Seguria. Good morning, Ms. Vaughn. Good morning, Your Honors. May it please the Court. My name is Denise Vaughn and I represent the appellant, Mr. Efrain Leonides-Seguria. This appeal concerns two issues. The first issue is whether the ruse exception to the Speedy Trial Act should require collusion between ICE and the U.S. Attorney's Office. And the second issue is whether the illegal reentry law passes constitutional muster under the Fifth Amendment. In light of this Court's recent opinion in Bavaro's Chavez, I want to respect that there is now binding precedent on the illegal reentry issue. So today I would like to focus my argument on the ruse exception since the Seventh Circuit has not yet adopted it. My client asked the Court to do two things. First, follow its sister courts and adopt the ruse exception as described in the First, Fifth, and the Eleventh Circuits without a collusion element. And second, to reverse the district court's finding that the ruse exception did not apply in this case. The ruse exception has been considered and adopted in every other circuit court. However, circuits are split on whether the ruse exception includes a collusion element. For this reason, the district court committed an error of law in holding that the ruse exception is only met if there's collusion, as in prosecutorial misconduct. The district court... The circuit courts, at least to my eye, that have acknowledged it have kind of done so in a theoretical way. Have you identified any circuit court that has actually granted relief on the basis of the exception? Yes, not granted relief, but they're split on whether they need to include a collusion element and what... Right, but have you found a decision where a court says not only does the exception exist, but this particular defendant is entitled to relief because there was a speedy trial violation? No, Your Honor, not in a circuit court. I want to focus my argument today on why the Seventh Circuit should adopt the primary purpose version of the ruse exception without a collusion element and why that is the most workable test. The text of the Speedy Trial Act does not include anything about intent. It is just about math. It's trying to provide parameters around the Speedy Trial Act, ensuring that once someone is arrested, the government needs to file an information or indictment within 30 days. As this court knows, a civil arrest does not trigger the Speedy Trial Act, but that's where the ruse exception comes in to ensure that the moment that the civil arrest becomes criminal in nature or that the primary purpose of the civil detention is to prosecute, then that's when the 30-day clock should begin. So the ruse exception should not be an inquiry about government malfeasance. It should just be an inquiry about when the decision was made to hold that civil detainee for the primary purpose of being prosecuted. This would be an objective inquiry versus a subjective inquiry. Put more simply, it would be the ruse exception and not the collusion exception. A ruse can be accomplished without collusion or prosecutorial misconduct. So we would have to make this distinction between a ruse and collusion because the district court found that the ruse exception is an unworkable test that has many iterations. When did it happen here? Because when I look at this particular timeline, right, the detention, the executive branch's detention occurred on June 15th at the beginning, and then the information at the end of the timeline was filed on July 27th. When does day one tick in your view in that from the beginning to the ending point? It is our belief that the primary purpose of the detention became criminal as early as June 15th. We have proposed three dates in our briefing, but I would like to focus the court's attention on June 23rd. So on June 23rd, that is when the U.S. Attorney's Office filed the criminal complaint, and we have testimony from the agent who referred this over to the U.S. Attorney's Office on page 102 of the record, and Agent False was asked, why did ICE make the decision about referring it over to the U.S. Attorney's Office? So the question was, on June 23rd, it was decided he was no longer in custody to be deported, to be deported but not prosecuted, to be prosecuted, excuse me. And her answer was yes. So that means that on June 23rd, it was functionally impossible for my client to be deported. The U.S. Attorney's Office indisputably made the decision to prosecute him on that day. So again, we're seeing we disagree with the district court's application that there was not a decision on that day for him to be prosecuted. So we would have to conclude then that within the meaning of 3161B, the Department of Homeland Security affected an arrest of the defendant on June 23rd, 2021. The arrest for the purposes of the Speedy Trial Act was civil, and it would have started on that date. Right, who's the actor though? The actor? Who affected the arrest on June 23rd? Somebody had to have done it. Yes. Some member of the government, right? Yes, it would be ICE, yes. So we are proposing this test as outlined in Restrepo, and the district court found that Restrepo was the apex of the ruse exception discourse. And since Restrepo, three circuit courts, the 1st, 5th, and 11th, have adopted that language that was found in Restrepo, which is one, that the primary purpose of the detention becomes or is revealed to be criminal in nature, and two, that the subsequent criminal charges is premised on the same misconduct as the civil charge. And this is what we are referring to as the primary purpose test. So for the sake of time, I won't go into each circuit's opinion stating on this, but in the 1st, the 11th circuit in Druin stated that in order to invoke the ruse exception, it places the burden on the detainee to establish that the primary or exclusive purpose of the civil detention was to hold him for future prosecution. Similarly, in the 5th circuit in De La Pena and Juarez, they dismissed the collusion element entirely and stated that we will only apply this exception where the defendant demonstrates that the primary or exclusive purpose of the civil detention was to hold him for future prosecution. The 1st circuit, in discussing it, it said that it will not trigger the Speedy Trial Act in absence of collusion or evidence that the detention was for the primary purpose of prosecution. So the 1st circuit believes that the ruse exception can be met with or without collusion. So even if this court decides that the ruse exception should include an element of collusion, we find that this element has been met and I would like to focus the court's attention to June 21st. So on June 21st, after Agent Falls, who was working in ICE, she learned who was going to be the U.S. attorney assigned to the case. So she emailed the U.S. attorney, AUSA Wagamoth, and asked her whether she could have that complaint done before Friday. And in her own testimony, as reflected in the record on page A92, Agent Falls testified that she asked the U.S. attorney this because if the complaint was not filed by Friday the 25th, there was a possibility that he would be put on a flight to Mexico on that day and deported. So what ended up happening, AUSA Wagamoth ended up filing the complaint before that Friday. So we see here that that was a clear error by the district court in finding that this was not collusion. This was an intentional decision by two government actors to come together to evade the requirements of the Speedy Trial Act. So based on these facts, we find that the district court committed a clear error in finding that the ruse exception did not apply in this case, regardless if the exception required collusion. In whichever way that the Seventh Circuit ends up adopting the ruse exception, it has been met here. We see that the primary purpose became revealed to be criminal in nature as early as June 15th, as I said, and each day passing, the purpose of his detention was very evidently to be prosecuted. When his A file went from the removal department to the prosecution department within ICE, we see that, again, it was not possible for him to be removed. So let me give you a fact pattern that I don't think is all that hypothetical. If an agent within the Department of Homeland Security is in contact with the FBI or the U.S. Attorney's Office about a noncitizen who poses a serious terrorism risk to the nation and the DHS or ICE agent says, we're going to remove Mr. X in 14 days unless you all do something criminally. He poses a serious risk and we need to get him out of here. And the U.S. Attorney's Office says, all right, we're working on it. We can get to a grand jury or we think we can get a complaint done within 14 days. But you're holding him, not removing him until then would be much appreciated. That's fairly characterized as a ruse. Your Honor, it would be a contextual question, of course. But specifically, what I'm seeing in that scenario is that the government is allowed to coordinate. Yeah, you have the Attorney General of the United States through U.S. Attorney's Offices and you have the Secretary of the Department of Homeland Security coordinating with each other on how to address a national security risk posed by a noncitizen. And in my time frame, I mean, this seems to have happened at light speed to me. When I look at this time frame, so I'm trying to build out a little bit more time, 10 days, 2 weeks, a month. Yes, Your Honor. So specifically in this case, we're seeing that even before he was picked up, they were doing calculations about how they were going to handle my client. They were calculating, the arresting officers were calculating, okay, are we going to administer Miranda warnings? And the testimony showed that they do this in cases where they suspect that this person is going to be prosecuted so that those admissions would be able to come in to the case. So in our case, we're seeing that it goes beyond the level of coordination, but we're seeing that my client was picked up by ICE, but in actuality, these arresting officers already knew that they did not plan to remove him, but it was very likely that he was going to be prosecuted. So what we're arguing here is that as soon as that purpose becomes revealed, then that's when the ruse exception or the 30-day clock should begin. And the reason for that is that we want to adopt this ruse exception is because we want to make sure that we're achieving the purpose of the Speedy Trial Act, that we're not unlawfully detaining people who are in federal custody, albeit civil or criminal. So once it becomes criminal, then they should be afforded the right of the Speedy Trial Act, and that's what the ruse exception is trying to reconcile, the clear text of the Speedy Trial Act. Okay, you want to save some time for rebuttal? Yes, Your Honor. Okay. Thank you. You're welcome. Ms. Fong, thanks to you. Mr. Fullerton, good morning. Good morning. May it please the Court. The district court correctly found that the immigration authorities and the U.S. Attorney's Office or the federal criminal authorities did not collude in any way or try to scheme to get around the requirements of the Speedy Trial Act and that that would have been required to apply the ruse exception, which has not been adopted by this circuit but had been adopted by other circuits. That factual finding is clearly correct. It's not erroneous. There was no evidence in the record to show that the defendant had been arrested or apprehended at the request of federal criminal authorities. He had been identified by immigration authorities who had gone through the records of people who were held in custody in Illinois state prisons. Mr. Seguria had been deported six times previously and had been twice convicted of unlawful reentry after deportation. So he was a candidate for removal whether or not the federal criminal authorities said anything about him. So he gets apprehended on June 15th. On June 21st, one of the immigration authorities, whose job it is to review detainees for possible prosecution, went through and identified Mr. Seguria as a possible candidate for prosecution and, as Your Honor indicated, with lightning speed, had his fingerprints compared to make sure that indeed he was the man who had been deported previously and that same day made a criminal referral to the U.S. Attorney's Office between 5 and 6 p.m. Within two days, on the 23rd, there was a criminal complaint charging Mr. Seguria with the 1326 violation. At no time was he being held. The evidence showed that at no time was his detention at the request of the criminal authorities or prolonged by the criminal case or that the conditions of his confinement and detention were materially altered by the fact that these charges had been filed on June 23rd. On June 24th, then, when the immigration authorities received the warrant from the magistrate judge, then there's some delay built into getting him transferred down here to make his initial appearance on the complaint. And that was entirely reasonable. Mr. Seguria was in custody for the immigration detainer, and he has not shown, the record did not show, there was no testimony that he would have made that flight on Friday, June 25th, in the absence of the criminal complaint, or indeed that he would have made some other flight. It was, as one can imagine, there were a lot of people to juggle, a lot of people in custody, a lot of logistics involved in getting everybody scheduled and on a plane and have all their proper medication and make sure they didn't have a positive COVID test. So there's a lot of shuffling around, a lot of things to do before somebody gets assigned to a flight back to Mexico. And Mr. Seguria didn't show that he was interrupted in some way in taking a flight like that. So there was no evidence to show that the primary or exclusive purpose of his detention by the immigration authorities was for criminal prosecution. The fact that he was a candidate for criminal prosecution was evident from the very beginning, but certainly there was no guarantee that he would be prosecuted criminally. And there was certainly no evidence that the authorities, either on the part of immigration or on the part of the federal criminal authority, criminal prosecuting authorities, were trying to evade the restrictions of the speeding trial act. In fact, the evidence showed quite the contrary. People were concerned about, well, let's get him out of here, let's get him moving, let's get this thing going, let's make sure he's got his medication. The record was really clear that if there were to be a ruse exception adopted by this court, and the court need not do that because this case does not arise to any form of ruse exception, Mr. Seguria was not a candidate for expanding the speeding trial act prior to June 28th, the date he made his initial appearance in this building. Mr. Fullerton, I do have a couple of questions for you if you don't mind. In making your presentation and your argument here this morning, you cast it in terms of there not being any evidence that the primary purpose was detention for criminal purposes. Is the government's position that purpose, primary purpose, primary objective, some kind of form, is that the proper inquiry to make under the speeding trial act, or are you making that more in response to Ms. Vaughn's argument? I'm making that in response to my opponent's argument. I don't believe that is the proper test. I believe the proper test is the one articulated by the district court that's in Cepeda Luna, I believe the Ninth Circuit case from the early 90s, which kind of launched this doctrine, which is that there has to be a showing that there was collusion to evade the purpose, the restrictions of the speeding trial act. That's what the district court applied and found there was no evidence of that. But even if it were a primary or exclusive purpose test advocated by my opponent, there's also no evidence of that. Okay, and then my final question is this. Ms. Vaughn, I think she's done a quite fine job at raising a broader concern on a fact pattern that may lend itself to an inference of conclusion. So let me give you one hypothetically. Forget the detainer at Cook County scenario, and suppose you have an individual affirmatively in ICE custody, and FBI, not FBI intel, FBI law enforcement, in coordination with the U.S. Attorney's Office, are, while in ICE custody, routinely, regularly interviewing the individual, thinking that he may cooperate, perhaps. He's agreed to talk every single time Moran dies. And it being told to him that the reason you're being held is because there's a quite serious criminal prosecution or criminal investigation relating to the matters we're talking about. And the Department of Justice has coordinated with DHS, do not remove this man while we pursue the criminal investigation. Hold him. Would you agree that's a much more concerning fact pattern? I'm not suggesting that happens. I'm making it up. I understand. It's more concerning, but I don't think the Speedy Trial Act attaches it. until somebody gets charged and arrested, or arrested and charged, because no charges are hanging over that person's head. A detainee in immigration custody is expected, as I understand it under the statute, to be deported within 90 days. So the detainee may have some rights under the immigration law to a review of how long that— that there's really not a de facto arrest by another department within the executive branch. Correct. Okay. So unless the court has any other questions, we'd ask you to affirm the district court's rule. Okay. Mr. Fullerton, thanks to you. Ms. Vaughn, you do have some time left. We welcome you to come back. Your Honor, the government is referring to lightning speed, and that is just simply not the test. Thirty days is the standard. We're not talking about how quickly the government tried to move or what obstacles came in the way. It's the Speedy Trial Act and the Roos exception is ensuring that as soon as the person is in custody to be prosecuted, that the charges will be coming within 30 days. So there are exceptions under 3161H, but none of those applied in this case about where— where there would be an acceptable reason for going outside the 30 days. It also was an inaccurate statement by the government to say that there was no evidence concerning this because the A file is the evidence. There is numerous testimony from all the agents that say that the A file determines what happens with the detainee. So when the A file moves from the removal department to the criminal prosecution department, their own witnesses said that it is impossible for that person to be deported. So the purpose then becomes that their detention is now criminal because they cannot be deported. And we also need to address the fact that there is a need to adopt the Roos exception because the Seventh Circuit would be the only circuit that has not adopted a version of the Roos exception. This circuit has the opportunity now to instruct a workable version of the test, which we assert would be the primary purpose version of the test, because it would allow us to avoid getting into what the prosecutors or the ICE agents were thinking about, but what actually happened. So the final point that I'll just make is that just because there is a lawful basis to arrest somebody, that does not mean that that is the primary purpose of why they're being arrested. And once the government chose to deprive my client of his individual liberty for the purpose of seeking criminal charges, that is when the Roos exception is triggered. So we just ask that the court will adopt the Roos exception and reverse the decision of the district court. Thank you. Okay. Ms. Vaughn, thank you very much. I see here you accepted this case on appointment from the court, right? Yes. Okay. You've done a very fine job. We appreciate you accepting the appointment. Your client should know he was well represented. Thank your firm for taking it on. Mr. Fullerton, as always, thanks to you. Mr. Kerwin, we'll take the appeal under advisement. Thank you.